IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-CV-22473-KING

TRAVELER INDEMNITY COMPANY
OF CONNECTICUT a/s/o CAMILO
OFFICE FURNITURE, INC.,

    Plaintiff,

v.

CENTIMARK CORPORATION d/b/a
CENTIMARK ROOFING SYSTEMS,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (DE #40), filed August 8, 2010.[1] Plaintiff's Amended Complaint (DE #29) purports to state five causes of action,[2] *via* subrogation, relating to roofing work performed by Defendant for Plaintiff's insured in 1993. After completing significant discovery relating to those claims, Defendant now argues that summary judgment is appropriate on its own behalf for the following two reasons: i) the relevant statute of limitations bars Plaintiff's claims; and ii) Plaintiff's insured, Camilo Office Furniture, previously released and discharged Defendant as to the claims raised by Plaintiff.[3] After careful consideration and for the reasons detailed below, the Court agrees that Plaintiff's claims are barred by the applicable statute of limitations and therefore

---

[1] On August 17, 2010, Plaintiff filed a memorandum in opposition (DE #45), to which Defendant filed a reply (DE #50) on August 31, 2010. This matter is therefore ripe for determination.

[2] The five causes of action pleaded by Plaintiff include the following: 1) Breach of Contract; 2) Negligence; 3) Building Code Violations; 4) Strict Products Liability; and 5) Negligent Failure to Warn.

[3] While Defendant had initially raised a third basis for summary judgment, it now admits that basis is subject to questions of fact. (DE #50 at 2). As such, it is not appropriate for consideration at this stage.

determines that Defendant's motion will be granted.

## I. Factual Allegations

As has been noted, this is a subrogation action brought by Plaintiff, an insurance company, to recover damages that were paid to its insured, Camilo Office Furniture. The damages suffered by Camilo relate to roofing work completed by Defendant 17 years ago. Specifically, the Amended Complaint alleges that Camilo hired Defendant in June 1993 to provide Camilo with a new roofing system on one of its industrial buildings. Am. Compl. ¶12. Defendant performed the work for which it was paid.

The record evidence demonstrates that Camilo first learned of defects in the roofing system within a year of the date Defendant had completed its installation. *Lopez Dep.* 36:13-38:2. Indeed, Camilo's owner, Jose Lopez, admits that there have been leaks in the roof installed by Camilo since CentiMark installed the roof. *Id.* at 36:24-37:1. While CentiMark attempted to repair the leaks, *id.* at 37:2-11, they were unsuccessful and the leaks continued to be a problem. *Id.* at 37:9-19.

Additionally, Camilo had experienced another problem with the roofing installation. When installing the roofing system in 1993, Defendant had installed nails and screws that pierced the interior ceiling of Camilo's building. This type of ceiling damage is known as "spalding." Camilo was dissatisfied with the work performed by Defendant and, by agreement dated April 12, 1996, the parties entered into a "Credit Adjustment and General Release," whereby Defendant gave Camilo a credit of $9,650 in exchange for a release of Camilo's property damage claim. (DE #40-2); *Lopez Dep.* 34:12-23. There is no dispute that the Credit Adjustment and General Release, in a section entitled "Description," states the agreement is for "[s]ettlement of property damage claim resulting from spalding of ceiling during roofing project." In pertinent part, that Credit Adjustment and General Release states:

2

> [Camilo] does release, discharge and acquit, and by these presents does hereby release, acquit and forever discharge Centimark Corporation ... of and from any and all past, present and future claims, counterclaims, demands, actions, causes of action, liabilities, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, of every nature and description, whether known or unknown, suspected or unsuspected, foreseen or unforeseen ... whether arising at law or in equity .... It being the intention of [Camilo] to effect a full and general release of all such claims.

(DE #40-2). Even after the agreement was signed by Camilo and Defendant, however, the roof continued to leak. *Lopez Dep.* 15:13-16; 36:13-38:2.

With the arrival of Hurricane Katrina to Miami in August 2005, there were further problems with Camilo's roof. As noted in the Amended Complaint, Katrina was a "weak Category One hurricane when it made landfall[,] having maximum sustained winds of only approximately 80 MPH." Am. Compl. ¶17. Nonetheless, even given the weak nature of Katrina's landfall, Camilo experienced substantial roof damage. Subsequently, Camilo submitted an insurance claim to Plaintiff seeking recovery of its losses. Am. Comp. ¶22.

Camilo's insurer, Plaintiff in this matter, investigated the damage and determined it was caused by the premature failure of Defendant's building materials. It was at that time that, according to the Amended Complaint, it became known to Camilo that there were certain deficiencies relating to the roofing installation that had been performed by Defendant 12 years prior. Plaintiff claims that there was no way of determining the actual cause for the roofing failure until Hurricane Katrina exposed certain violations of the South Florida Building Code in the roofing construction.[4] According to Plaintiff's experts, Camilo's roofing system failed prematurely because Defendant's installation was flawed in several ways: namely, Defendant had failed to investigate the condition of the roof prior to beginning its own work, which was a

---

[4] Namely, the roofing system was to consist of a "mechanically attached .60 in. thick single-ply E.P.D.M. rubber roofing membrane over new polyisocyanurate insulation board" over Camilo's original roofing system. Am. Compl. ¶13. Additionally, Plaintiff claims that certain Miami-Dade Building Codes were in effect at this time, requiring "the roof to be able to withstand wind uplift forces generated by sustained wind speeds of not less than 120 MPH." Am. Compl. ¶14.

direct cause of the failure of certain wooden nailers used to attach the roof membrane, Am. Comp. ¶25(a)-(b); and installation had been not complied with applicable building codes, Am. Compl. ¶25(d)-(k).all of which are directly attributable to Defendant's negligence. Plaintiff paid Camilo approximately $1,700,000, and now sues Defendant for that amount.

Defendant raises two grounds in support of its motion for summary judgment. Namely, Defendant argues that Plaintiff's claims are untimely, as Camilo long knew of any alleged problems relating to the roof installation performed by Defendant in 1993, and that the Credit Adjustment and General Release signed by Camilo and Defendant now bards Plaintiff's suit. Each argument will be addressed in turn below.

## II. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

4

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

## III. Discussion

As noted above, the two bases raised by Defendant in support of its motion for summary judgment are a statute of limitations defense and a defense arising from the Credit Adjustment and General Release entered into by Camilo and Defendant in 1996. Because the Court finds that Plaintiff's claims are barred by the pertinent statute of limitations, it will not decide the Defendant's second basis for summary judgment.

### A. Statute of Limitations as Bar to Plaintiff's Claims

Defendant's first argument for summary judgment is predicated on the pertinent Florida statute of limitations. Florida law requires that any "action founded on the design, planning, or construction of an improvement to real property" must be brought within four years of the time of the improvement. Fla. Stat. § 95.11(3)(c); *Havatampa Corp. v. McElvy, Jennewein, Stefany & Howerd, Architects/Planners, Inc.*, 417 So. 2d 703, 704 (Fla. 3d DCA 1982). According to Defendant, because the roofing system that it installed for Camilo in 1993 constitutes an "improvement" as defined by § 95.11(3)(c), any action was required to be brought within four years of its 1993 work. There is no dispute that Section 95.11(3)(c) is the controlling statute in this instance.

Instead, the pertinent issue is when a cause of action accrued to Camilo. Defendant states that the nature of the alleged roofing defect determines when the statute of limitations begins to

5

run, which is an accurate reflection of Florida law. Under § 95.11(3)(c), a cause of action arising from a latent defect arises upon construction of the improvement, while a cause of action arising from a patent defect only arises "from the time the defect is discovered or should have been discovered with the exercise of due diligence." *Id.*

Nonetheless, Defendant claims that, even if any alleged defect with the roofing system is considered a latent defect, Camilo long had notice of any such alleged defect and Plaintiff's action is therefore untimely. Defendant points to the deposition testimony of Camilo's owner, Jose Lopez, which demonstrates that Camilo had long known a problem existed with the roof, although Camilo had not identified with specificity that problem. *Lopez Dep.* 36:13-38:2.

Plaintiff admits that Camilo long had notice that Defendant's roofing work leaked. Indeed, Plaintiff concedes that its suit against Defendant "came approximately 17 years after representatives of Camilo first noticed leaking associated with [Defendant's] roofing system installation." (DE #45 at 10).

Nonetheless, Plaintiff claims that its suit is not barred because no cause of action existed until the time that Hurricane Katrina struck Miami. In support, Plaintiff states that, under the delayed discovery doctrine, a cause of action does not accrue until the "moment [an] injured party or reasonable person in an injured party's situation knew or should have known that 1) the acts complained of 2) caused damage" (DE #45 at 10-11) (citing *FPL v. Allis Chalmers Corp.*, 85 F.3d 1514 (11th Cir. 1996). Plaintiff argues that "neither Camilo nor [Plaintiff] knew or had reason to know of [Defendant's] building code violations on the Camilo roofing project until the roofing system's premature failure and loss on August 25, 2005." (DE #45 at 3). Indeed, Plaintiff seeks to undermine Defendant's "link [of] minor damages from a 1993 roof leak condition discovered shortly after the roofing system's completion with the presumptive expectation that Camilo knew or should have known that the leak was caused by the alleged

6

building code violations." (DE #45 at 12).[5]

Plaintiff's argument that the precise source of a defect is required to cause a claim to accrue is not legally sound. According to Plaintiff, no cause of action could accrue under Florida law until the *exact* nature of an alleged violation or action was determined. Under Plaintiff's reasoning, Defendant "must show that Camilo reasonably should have known that the roof leak was the result of [Defendant's] failure to comply with Sections 3401.3(a)(13), 3401.4(b)(3), 3401.9(c)(4), 3402.2(a)(1), 3402.2(b)(1) and 2309.1(b)(1) of the 1988 South Florida Building Code ..." (DE #45 at 13). Under that reasoning, it is not sufficient to identify a leak in a roof. Instead, the specific statutory violation leading to negligent work must be identified before a claim may accrue. Such a position finds no support in case law. *Cf. Kelly v. Sch. Bd. of Seminole County*, 435 So. 2d 804, 806 (Fla. 1983) ("When a newly finished roof leaks it not only apparent, but obvious, that someone is at fault") (internal citation omitted); *Havatampa Corp.*, 417 So. 2d at 704 (same).

In this regard, *Havatampa Corp.* strongly undermines Plaintiff's argument. In *Havatampa Corp.*, the architect, contractor, subcontractors, materialmen and bonding company utilized in constructing a 250,000 square foot roof were sued for construction of a faulty and leaky roof. *Havatampa Corp.*, 417 So. 2d at 704. The plaintiff in that case learned of the leaky roof on the very first day of occupying the building. While defendants attempted to repair the leaky roof, those repairs were unsuccessful. *Id.* Over four years later, the plaintiff hired an independent consultant to inspect the roof, who determined that "the cause of the leaking roof was complex and that it was not reasonably possible for the [plaintiff] to know the true nature or

---

[5] Plaintiff further argues that knowledge of a leak does not imply knowledge of alleged failure to comply with §§3401.3(a)(13), 3401.4(b)(3), 3401.9(c)(4), 3402.2(a)(1), 3402.2(b)(1) or 2309.1(b)(1). Indeed, Plaintiff claims that Defendant failed to "cite evidence, nor even allege, that Camilo suspected, believed or otherwise cognitively associated the roof leak condition of 1993 with one or more of the multiple building code violations at issue." (DE #45 at 13).

full extent of the specific nature of the defects that caused the roof leaks." *Id.* Although the plaintiff in that case had argued that no cause of action could accrue until plaintiff had knowledge of the specific nature of the defects in question, the Second District Court of Appeals disagreed, holding that the plaintiff "cannot rely on a lack of knowledge of the specific cause of the problem to protect it against expiration of the four-year statute of limitations." *Id.* Similarly, Plaintiff in the instant matter may not proclaim that, because Camilo had no knowledge of the specific building code violations until Hurricane Katrina, no cause of action accrued until that time. *Havatampa* specifically addressed this argument and found it meritless, as does this Court.

Moreover, Plaintiff's argument wrongly conflates severity of a problem with knowledge of that problem. To Plaintiff, the "minor damages" noticed by Camilo were not so substantial as to notify Camilo of a greater problem with its roofing system. (DE #45 at 12). According to Plaintiff, it took a greater event – here, Hurricane Katrina – to provide Camilo with notice of the allegedly defective nature of the roofing work performed by Defendant. Plaintiff, however, fails to cite even one case that would credibly support such a distinction.

The undisputed facts at issue make summary judgment on statute of limitations appropriate. For purposes of making this determination, the relevant facts are as follows:

- Defendant performed roofing work for Camilo, Plaintiff's insured, in 1993.
- Camilo learned of deficiencies with the roofing work performed by Defendant and notified Defendant of those deficiencies soon after completion of the initial work.
- Defendant attempted to address those deficiencies.
- Twelve years later, Hurricane Katrina struck, causing significant damage to Camilo's roofing system.
- Several years after Hurricane Katrina, Plaintiff, Camilo's insurance company, sought to bring suit against Defendant for deficiencies in the roofing system.

Given these facts, Plaintiff cannot now argue that, because Camilo allegedly did not know of the

8

certain purported violations to the Florida Building Code at the time of construction, Camilo did not have notice of deficiencies with the roofing system installed by Defendant. The record conclusively demonstrates that Camilo had discovered defects in Defendant's roofing work soon after its completion in 1993. Therefore, Plaintiff's claims are barred by the pertinent statute of limitations found in Section 95.11(3)(c), Florida Statutes. *Accord Kelley*, 435 So. 2d at 806 ("The evidence shows that, regardless of [Defendant's] attempts to repair the roofs and regardless of [Plaintiff's] lack of knowledge of a specific defect, [Plaintiff] knew more than four years prior ... that something was wrong with the roofs"); *Havatampa*, 417 So. 2d at 705.

    B. Credit Adjustment and General Release as Bar to Plaintiff's Claim

Secondarily, Defendant also argues that summary judgment is appropriate on its behalf because of the Credit Adjustment and General Release entered into by Defendant and Camilo on April 12, 1996. Under that agreement, Camilo agreed to:

> release, discharge and acquit, and by these presents does hereby release, acquit and forever discharge Centimark Corporation ... of and from any and all past, present and future claims, counterclaims, demands, actions, causes of action, liabilities, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, of every nature and description, whether known or unknown, suspected or unsuspected, foreseen or unforeseen ... whether arising at law or in equity .... It being the intention of [Camilo] to effect a full and general release of all such claims.

(DE #40-2). Defendant therefore states that this broad release encompasses any claims that are now raised by Plaintiff.

Plaintiff argues that the Credit Adjustment and General Release does not bar its claims for several reasons. First, Plaintiff claims that the agreement applied only to claims arising as a result of spalding, which was the catalyst for the agreement between the parties. According to Plaintiff, it "does not provide a universal waiver of all claims associated with [Defendant's] roof installation services." (DE #45 at 17). Additionally, Plaintiff further argues that the agreement constitutes a prospective exculpatory clause, which is unenforceable under Florida law. (DE #45

9

at 18); *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244 (Fla. 1st DCA 2008).

This Court need not decide this issue given the application of the statute of limitations as a bar to Plaintiff's claims. Nonetheless, the Court notes that the Credit Adjustment and General Release may cover such claims as those raised by Plaintiff. While Plaintiff attempts to limit the reach of that agreement between Camilo, it is undisputed that the agreement was only entered into after Camilo had first discovered defects in the roofing work performed by Defendant. As such, the agreement does not demand that Camilo waive compliance with any purported building violations but instead constitutes an awareness of deficiencies with the roofing work performed by Defendant. Where parties enter into an agreement subsequent to the completion of work to address any liability arising from that work, Florida law recognizes that such agreements are legally valid and enforceable.

## IV. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant's Motion for Summary Judgment (DE #32) be, and the same is, hereby **GRANTED**. Plaintiff's claims are barred by the pertinent Florida statute of limitations.

2. The above-styled action is **DISMISSED WITH PREJUDICE.**

3. All pending motions are **DENIED AS MOOT.**

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 29th day of September, 2010.

/s/ James Lawrence King
HONORABLE JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

**Counsel for Plaintiff**
**Hilary Chulock**
Law Offices of Robert F. Tacher
3230 West Commercial Blvd.
Suite 250
Fort Lauderdale, FL 33309
954-677-3700
Fax: 954-677-3710
Email: hchulock@travelers.com

**Counsel for Defendant**
**Gregory Mark Palmer**
Rumberger Kirk & Caldwell
80 SW 8th Street
Suite 3000
Miami, FL 33130-3047
305-358-5577
Fax: 305-371-7580
Email: gpalmer@rumberger.com

**Dara A. Lorion**
Rumberger Kirk & Caldwell
80 SW 8th Street
Suite 3000
Miami, FL 33130-3047
(305) 358-5577
Fax: (305) 371-7580
Email: dlorion@rumberger.com